UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


**UNITED STATES OF AMERICA**,

          Plaintiff,

                        District Court Docket No.:
                        5:10-cr-00039-RS-LB-4

     vs

**JOSE BARAJAS,**

          Defendant.

_____/


        Sentencing Proceedings in the above-styled cause before the Honorable **RICHARD SMOAK**, District Court Judge, on the 10th day of November, 2010, at the United States District Court, 30 West Government Street, Panama City, Florida, reported by Robin White Wierzbicki, FAPR, FPR, Registered Professional Reporter.

**APPEARANCES**

**FOR THE PLAINTIFF:**     **GAYLE LITTLETON, ESQUIRE**
Assistant United States Attorney
30 West Government Street
Panama City, Florida 32401

**FOR THE DEFENDANT:**     **JEAN MARIE DOWNING, ESQUIRE**
Downing Law Offices, P.A.
2111 Thomas Drive
Suite 1
Panama City, Florida 32408

---

**INDEX OF PROCEEDINGS**

Objections to Presentence Investigation Report
    By Ms. Downing        5, 7

Response to Objections to Presentence Investigation
    Report by Ms. Littleton        6, 13

SENTENCING BY THE COURT        27

CERTIFICATE OF REPORTER        32

1                    **P R O C E E D I N G S**

2                        ***   ***   ***

3          THE COURT:  Are we ready to proceed with United

4      States versus Jose Barajas?

5          THE CLERK:  One second.  The interpreter is

6      signing her oath.

7          MS. DOWNING:  I didn't get a chance to speak with

8      Mr. Barajas before.  The interpreter wasn't available,

9      if I could just ask him --

10         We're ready to proceed.

11         THE COURT:  This is the sentencing hearing in the

12     United States versus Jose Barajas.  Counsel, if you

13     will state your appearances, please.

14         MS. LITTLETON:  Gayle Littleton on behalf of the

15     United States.

16         MS. DOWNING:  Jean Downing on behalf of defendant

17     Jose Barajas who is in the courtroom.

18         THE COURT:  Mr. Barajas, the way we will conduct

19     the hearing, is that I will first hear from your

20     attorney about her review of the Presentence

21     Investigation Report and determine if she has any

22     objections to that report.  I will then hear from the

23     U.S. Attorney about her review of the Presentence

24     Report and determine if the Government has objections.

25     If anyone has objections, we will resolve those

1    objections before we do anything else.

2         I will then give you an opportunity to speak, if

3    you choose.  You are not required to say anything.  But

4    you have the right to speak in your own behalf before

5    you are sentenced.

6         THE INTERPRETER:  He justs want to know when he

7    will have the opportunity to speak.

8         THE COURT:  I'm sorry?

9         THE INTERPRETER:  He will like to know when he is

10   going to have the opportunity for him to speak?

11        THE COURT:  I will tell him.  You don't have to

12   say anything.  But you have the right to speak in your

13   own behalf before you are sentenced.  If you have

14   something you would like to say, I will certainly

15   listen then to what you have to say.

16        I will then hear from your attorney about an

17   appropriate sentence.  And I will then hear from the

18   U.S. Attorney about a sentence.  Do you have any other

19   questions before we move on?

20        THE INTERPRETER:  He will like to say something.

21   He doesn't have a question.

22        THE COURT:  He has a question?

23        THE INTERPRETER:  He doesn't have a question, he

24   will like to say something.

25        THE COURT:  We will give him that opportunity in

1    just a minute.

2        Ms. Downing, have you had sufficient time to

3    review the Presentence Investigation Report of

4    Mr. Barajas?

5        MS. DOWNING:  I have, Your Honor.  I have met

6    with Mr. Barajas and an interpreter and went through

7    the report.

8        THE COURT:  Do you have any objections that are

9    still outstanding?

10        MS. DOWNING:  I do, Your Honor.  The objections

11    were set forth in the Presentence Report that the

12    probation officer prepared.  The objection that is

13    still outstanding that I'm requesting -- there are two

14    objections that are still outstanding.

15        The first is in Paragraph 148.  I objected to the

16    inclusion of the expanded offense information.  That is

17    kind of a bell that can't be unrung at that point.  My

18    issue with the objection was that, the Court sat

19    through the trial, heard all the evidence that related

20    to Mr. Barajas, that the inclusion of probably 20 --

21    well, it was paragraphs 8 through 12, 14, 15, 17, 18,

22    22 through 26, 27 through 73, 80 through 85, that was

23    about the big investigation overall, guns and drugs and

24    all of that, and Mr. Barajas was very much peripheral

25    to that.  It is an objection that I think at this point

1    doesn't relate to the sentencing, so I don't -- but

2    just for the future, if there is any direction that the

3    Court could give me so I won't object in the future if

4    that is something that's appropriately included.

5         THE COURT:  My understanding, Ms. Downing, that

6    really didn't have an effect on the sentencing

7    calculations.  Ms. Masso?

8         MS. MASSO:  It is just a regular practice our

9    office does to lay out the facts for the Court,

10   delineate roles for a role adjustment and that type of

11   thing.  Usually it has a benefit to a defendant like

12   Mr. Barajas, to show that he was not as involved as all

13   these other people.

14        I think I understand her concern as far as maybe

15   the firearms being mentioned, and the conduct as far as

16   the Bureau of Prison, things like that, but I don't

17   think that that could possibly justify any kind of, you

18   know, to say that he had responsibility for the

19   firearms or anything because we didn't hold him

20   accountable for that.

21        THE COURT:  He's not charged with that.

22        MS. MASSO:  Absolutely.

23        MS. LITTLETON:  That's correct, Judge, and if I

24   could also point out, the guidelines are based on

25   Mr. Barajas' conduct not so much -- he's not held

1 accountable for the firearms.

2  One other point, Your Honor, the facts included

3 in the PSR are supported by the Plea Agreement, the

4 Statement of Facts entered into by Mr. Martin Ramirez

5 Rodriguez where he admitted to all those.

6  So I think, as Ms. Masso points out, including

7 all that in there really helps to show Mr. Barajas was

8 not as involved as some of the other players here.

9  THE COURT:  Okay.  Ms. Downing, do you have

10 anything further on this point?

11  MS. DOWNING:  Not on this point.

12  THE COURT:  Any other objections?

13  MS. DOWNING:  There was an objection raised by

14 the defense as to the weight and the Government agreed

15 that the weight Mr. Barajas should be held accountable

16 for was the 7 kilos that he admitted to in his safety

17 valve interview.

18  Paragraph 152 in the Presentence Investigation

19 Report indicates that the way it should be set out in

20 Paragraph 86 conflicts with that, so it should be --

21 Paragraph 86, this is not something I raised before

22 because I just noticed it when I reviewed this, it

23 still says 11.  Paragraph 86 says based upon

24 information, held account for 11.  Again, it is not an

25 objection that affects his sentence because it is still

1    within the range of 5 to 15 kilograms, but it was just

2    an error that I noted, or maybe it is not an error, and

3    I wanted to bring it to the Court's attention and see

4    if the probation office --

5        THE COURT:  You don't have any quarrel with the

6    manner in which probation services has made its

7    calculations?

8        MS. DOWNING:  I do, because they are saying 11 in

9    Paragraph 86.  It is 7 in Paragraph 152.

10        THE COURT:  You are not disagreeing with 152,

11    though, are you?

12        MS. DOWNING:  No, Your Honor.  152 is the

13    ultimate finding.

14        MS. LITTLETON:  I think after the briefing on the

15    objections, I think probation has corrected that amount

16    so he's only being held accountable for the 7.

17        THE COURT:  That's my understanding.  Anything

18    further, Ms. Downing?

19        MS. DOWNING:  The last one is a substantive

20    objection that will affect the sentence if the Court

21    agrees with the defense position.  And this involves

22    Paragraph, it starts at Paragraph 162 in the

23    Presentence Investigation Report, and it was

24    Paragraph 4 in the Defense Objections or Response to

25    the Draft Presentence Investigation Report.

1          And, the essence of this is that Mr. Barajas met

2     with the agents on July 21st.  He gave a statement.

3     The agents took the stand in the trial and said that

4     they had not found any of his statements to be false.

5     He admitted responsibility for those 7 kilograms that

6     we just spoke about and his statement was used against

7     him at trial.

8          Now, the Government's objection, and of course

9     Ms. Littleton will address that on the Government's

10    behalf is that -- but he went to trial and I tried to

11    have the statement thrown out and I tried to poke holes

12    in the defense and I tried to tell the jury, well,

13    maybe that wasn't him on the recordings.  But

14    Mr. Barajas never took the stand and said it wasn't

15    him.  He went to trial, which is his constitutional

16    right to go to trial.  And there's a reason why Section

17    3E1.1(a) of the Sentencing Guidelines provides that if

18    the defendant clearly demonstrate acceptance of

19    responsibility, the probation -- the report -- the

20    offense level should be decreased by two levels.  And

21    we're asking for that two level reduction, even though

22    he did make the Government go to trial.

23          He did not, just by the fact that he went to

24    trial doesn't mean he denied his responsibility.  And

25    just because I did my job and tried to keep out his

1    statement and tried to poke holes in the Government's

2    evidence, I never -- I stood up there, and if I recall,

3    and the Court and the prosecutor may have copies of my

4    closing, but I recall saying the jury can decide if

5    they believe that that was his voice on the tape.

6    Towards the end it became more clear that duress was

7    going to be a better defense.

8        I mean, it was -- I am not sure why Mr. Barajas

9    changed his mind and didn't plead guilty and went to

10   trial after having given his statement.  He did.  I had

11   to do my job.  I had to do what I could to provide him

12   with the defense.  I am asking the Court not to hold

13   him accountable for me making my argument.  I couldn't

14   sit there silent during the trial.  I guess I could

15   have and we'd be all back here on a 2255 in a year or

16   so, or however long those take.  So I had to do my best

17   and provide him with a competent defense and try to

18   keep out statements that I thought there was a

19   legitimate, perhaps a legitimate legal argument to keep

20   them out.

21       But his actions at all times were acceptance of

22   responsibility.  He did not take the stand and deny his

23   involvement.  He never denied his involvement to me.

24   He never said, "I'm going to get up there and say I

25   didn't do it."  He never denied his involvement to the

1    Government, he just changed his mind about pleading

2    guilty and took it to trial.  He changed his mind about

3    pleading guilty and possibly cooperating with the

4    Government.

5        And the Court will recall that there was some

6    testimony from, and I can't remember the agent's name,

7    about how violent these drug wars are in Mexico and

8    that Mr. Barajas had told the agent he met with that he

9    was acting under duress and in fear.  And the jury

10    didn't take that -- they didn't accept that as a

11    defense to his action, and I'm not asking the Court to

12    accept that as a defense to his actions, but I'm asking

13    that the Court perhaps consider that that's why he went

14    to trial.  He was still under duress and still

15    concerned if he were to plead guilty and perhaps

16    cooperate with the Government, that his life wouldn't

17    last long in prison and that his family would be also

18    persecuted for his actions.

19        I understand the Government's position as well.

20    We went to trial and I, you know, made the argument.  I

21    did the best I could.  And I'm asking the Court not to

22    hold him responsible for it, and that there's got --

23    there has to be a reason why there's a separation in

24    the acceptance of responsibility.  There has to be a

25    reason why there's a 2 point and an additional 1 point

1      for -- and the additional 1 point I would suggest to

2      the Court, if he had pled guilty and notified the

3      Government and not made them put their case to trial.

4          But I know there was a similar situation with a

5      prior defendant, Amy Cooper, who made this same kind of

6      argument, that she went to trial on a legal issue.  One

7      of the things that was said in that sentencing hearing

8      was, well, she could have come in and given her

9      statement and admitted her responsibility and just

10     preserved this legal argument about the sufficiency of

11     her involvement.  And that's what I am asking the Court

12     to do here.  He did come in and give a safety valve

13     statement.  He did accept responsibility.  He did then

14     also force the Government to go to trial.  So he

15     shouldn't get a 3 point reduction but he should get a 2

16     point reduction.  And with that -- and that reduction

17     would be taken down to, from a total offense level of

18     30 down to a total offense level of 28.

19         And one thing in considering that, I just want to

20     point out to the Court, that the Government and the

21     probation officer did agree that Mr. Barajas still was

22     able to get the safety valve, which is really rare when

23     somebody goes to trial.  He was able to get the safety

24     valve adjustments because he did accept -- I mean,

25     that's part of getting the safety valve is accepting

1    responsibility, giving a truthful statement, so, I

2    think with getting the safety valve adjustment he

3    should get the adjustment for acceptance of

4    responsibility.

5         THE COURT:  Ms. Littleton, how do you respond to

6    that argument that it is inconsistent given the benefit

7    of safety valve but not give him a 2 point reduction

8    for acceptance of responsibility?

9         MS. LITTLETON:  Your Honor, I have got to go --

10   if you could give me one second, I want to go back and

11   look at those factors but, your Honor, the safety valve

12   is -- the safety valve adjustment is if the defendant

13   comes in and truthfully provides a statement, a

14   complete and truthful statement about the offense and

15   his involvement in the offense.  There is no dispute

16   that that's what this defendant did.  Prior to trial,

17   he came in and gave a safety valve interview, as this

18   Court is aware, because his statements made during that

19   interview were part of the testimony at trial.

20        So the Government does not dispute at all that

21   the statements that he made to the Government, not the

22   safety valve interview, were true.  All of that,

23   however, Your Honor, occurred before he went to trial,

24   before he decided to go to trial.  Before he, as

25   Ms. Downing put it, changed his mind and went to trial.

1        It was, I think, Ms. Downing's understanding as well as

2        my own that Mr. Barajas intended to plead.  And that he

3        had changed his mind at the last minute.

4            With regard to getting acceptance in this case, I

5        think those are distinguishable because he did in fact

6        provide a truthful statement prior to the trial.  At

7        trial, once he changed his mind and took this case to

8        trial, he did not accept responsibility.  In order to

9        get acceptance of responsibility when a defendant goes

10       to trial, that is usually reserved for cases which -- I

11       need to slow down, sorry.  That's usually reserved for

12       cases where the defendant makes a strictly legal

13       argument.  And that's essentially the only case where a

14       defendant can get acceptance of responsibility, the two

15       levels, when he or she goes to trial.

16           In this case, Your Honor, the defendant did not

17       come into trial and say, you will hear, members of the

18       jury, everything that the Government says about my

19       client is true; that he did this, he did this, he did

20       this; but the issue is going to be whether or not he

21       did it knowingly and voluntarily.  The issue was

22       whether he was under duress when he did it.  That's not

23       what happened here.

24           The defense in its opening statement, and really

25       throughout the trial and in the closing statement,

1    contested whether or not the Government had proven its

2    case beyond a reasonable doubt against him, in addition

3    to making a duress argument.  So the defense put the

4    Government to its burden separate and apart from any

5    defense in this case.  It questioned whether or not

6    Barajas was on the telephone, whether or not, you know,

7    I think he had even made the -- whether or not we had

8    proven that he actually delivered cocaine, because we

9    didn't find any cocaine once we seized his vehicle.

10          This is not the case where the defendant gets

11   acceptance because he makes a strictly legal argument.

12   This was a defense that evolved over time in this

13   trial.  The defendant held the Government to its

14   burden, took the Government to trial and did not accept

15   responsibility.

16          THE COURT:  What would be a strictly legal

17   argument?

18          MS. LITTLETON:  If, for example, the defendant

19   came into trial and said the defendant admits that he

20   did all of these things, that he drove -- in May he

21   drove from Texas to Alford, Florida, that he delivered

22   4 kilograms of cocaine, that that cocaine was of poor

23   quality.  That he took the cocaine to the Carolinas,

24   delivered it there, and returned to Texas.  That would

25   be a strictly legal argument if, then, the defendant

1    said, recognizing that he did all that, you should not

2    hold him accountable because he did it under duress.

3         That's not what happened.  The defense argued

4    vehemently about getting the safety valve argument into

5    evidence.  And argued that it may not be his voice on

6    the calls.  And that he may not have brought the

7    cocaine in because we didn't seize any of it.  Those

8    are factual arguments.  Those are not legal arguments.

9    And for that he does not qualify for acceptance.

10        THE COURT:  Okay.  Ms. Downing?

11        MS. DOWNING:  My response, that that was a legal

12   decision.  That was my -- my decision to question

13   portions of it.  We were -- we had a co-defendant, so I

14   don't see that the burden was on the Government any

15   more if we had just made that legal argument.  But

16   making -- saying that statement would be the same as

17   pleading guilty, and then just having made the argument

18   here before you that duress would be the reason for it,

19   he wasn't prepared to do that, for whatever reason.

20        So, my position is, that as a defense attorney, I

21   needed to poke holes in things and see what I could

22   find and what I could shake up and what I could do.

23   But it still boiled down to, with the jury at the end,

24   whether they believed that he was under duress or not.

25   His statement came in.

1          THE COURT:  Ms. Masso, how do you make this

2     analysis inside, this is not a case to put a reduction

3     for acceptance of responsibility?

4          MS. MASSO:  Cases like that are very rare, as has

5     been said.  Basically, the examples that are cited are,

6     if the person were to make a constitutional challenge

7     to a statute or a challenge to the applicability of a

8     statute to their conduct, that would be an example of

9     them making a type of legal argument at trial as

10    opposed to denying, maybe not heated, you know,

11    physically himself denying his guilt on the stand but,

12    you know, just by presenting the defense that was

13    presented.  And it did really fly in the face of the

14    safely valve interview and everything else we had known

15    about it.

16         THE COURT:  Are you saying that he didn't deny

17    what he was accused of, but he said he was threatened,

18    why is that not a factual thing?  It is something that

19    happened, what he claims happened, not how the law

20    might attach to this thing.

21         MS. LITTLETON:  I think, Your Honor, that -- I

22    think that you are right on that.  And listening to

23    Ms. Masso, I think it's, I think it is a factual

24    argument.  But it is one that I think for me

25    personally, as prosecutor in this case, I would not

1    have as much of a problem with his acceptance had he

2    come in and said, "I did everything but you, jury, need

3    to decide if I was threatened to do it."  It is a

4    factual argument and I misspoke when I said it is

5    legal.  You are absolutely right about that.

6         This is not -- the argument for acceptance is one

7    where, had he come in and said "I did everything, but I

8    did it because I was threatened," me, personally, as a

9    prosecutor in this case, I would not have as much

10   difficulty saying that he had accepted responsibility

11   here.  Given that he had done the safety valve

12   interview and we had, really up to trial, believed that

13   he was intending to plead.

14        So, I am in the position now of arguing against

15   acceptance because he did not accept his responsibility

16   in this case.  Had he though said "I did it but I was

17   threatened" and then the jury discounted it, I would

18   not, I would not feel as strongly about the fact that

19   he had failed to accept responsibility as I do in this

20   case.

21        THE COURT:  What's the difference, that you

22   viewed this as his position at trial was, or at the end

23   of trial, that the Government simply hadn't proved its

24   case?

25        MS. LITTLETON:  That's correct, Judge, the

1    defense of duress evolved.  This wasn't the situation

2    where Mr. Barajas said "I am going to go to trial

3    because I was threatened here."  It is not like that.

4    This defense evolved over time.  And by the end of

5    trial, the defense was not, "I did it but I was

6    threatened," its defense was, well, "I did it, but I

7    was threatened, but it wasn't me and I didn't bring the

8    cocaine and the Government hasn't proven its case that

9    I did anything wrong."  That's where, that is where the

10   Government takes issue with the claim he accepted

11   responsibility.

12        THE COURT:  I think that's a fair analysis.

13        MS. DOWNING:  One issue.  The other issue that

14   was actually contested at trial was the conspiracy

15   portion of it.  That is also a legal and factual

16   argument, whether he was involved in the conspiracy

17   portion.  He admitted his responsibility but he, you

18   know, he made -- he had a concern about the whole

19   conspiracy.  That goes to this whole trial.  I am

20   looking at my notes from my closing argument, you know,

21   whether he was part of a conspiracy was also a question

22   that was addressed there.

23        Again, I just -- I don't think that acceptance of

24   responsibility is precluded by going to trial even

25   where you put on a zealous defense.  Even though -- the

1    fact that you go to trial and the Government has to

2    prove all the elements, that's not putting the

3    Government to its burden of proof beyond anything that

4    would take him out of this acceptance of

5    responsibility.  They had to put on what they were

6    going to put on because we had had a co-defendant.

7        THE COURT:  Let me ask you this:  What did you do

8    at trial that made things any easier on the Government?

9        MS. DOWNING:  Probably not much, Your Honor.  I

10   can't, I mean, I guess my point with all of that is,

11   that's my job and my position as defense attorney.  I

12   don't think that changes Mr. Barajas' actions.  Had he

13   taken the stand, I think that's -- maybe that's my

14   argument.  I'm sorry, I'm not being real clear.

15       If he had taken the stand and said, "I didn't do

16   it," then not only he'd have obstruction of justice,

17   he'd have -- and then he definitely wouldn't have been

18   accepting his responsibility that he had given earlier.

19   But at no point did he take the stand and I didn't -- I

20   did fight getting the statement in, but once it came

21   in, we talked about it with all of the agents.  I mean,

22   I talked about it too.  I didn't make any -- I didn't

23   make any insinuations that they had threatened him or

24   made him lie about what he said.  In fact, I asked them

25   all whether what he had said had been truthful.

1          MS. LITTLETON:  Your Honor, if I may just

2      briefly?  What Ms. Downing is suggesting is where every

3      defendant goes to trial and does not take the stand, he

4      or she should get acceptance of responsibility.  And

5      that the defense counsel should be able to argue

6      whatever he or she wants to argue and the defendant

7      will still get acceptance.  That's simply not the case.

8          MS. DOWNING:  This is a very unique situation

9      where he gave a safely valve statement.  I am not

10      suggesting that should apply to every defendant that

11      takes the stand.  I don't think that's true.  I think

12      that a defendant electing to -- his constitutional

13      right to remain silent can still be held to not have

14      accepted responsibility.

15          THE COURT:  That was a question, is there any

16      resolvable inconsistency between the safety valve, the

17      benefits of the safety valve but not acceptance of

18      responsibility, but on the other hand, an act of

19      defense?  I think balancing that out, I am going to

20      deny the objection for the acceptance of

21      responsibility.

22          All right.  Mr. Barajas, would you like to speak

23      now on your behalf?

24          THE DEFENDANT:  (Through the Interpreter) With

25      all my respect, the only charge that's being, accusing

1      me, I think there are no right, all the people that are

2      mentioned in there, I didn't know nothing, nobody.

3      They forced me, a product that I didn't know that it

4      was cocaine.  They didn't told me that.  It was

5      vitamins and *osito* they told me.

6              MS. DOWNING:  May I have just a moment to direct

7      his --

8              THE COURT:  Yeah.

9              *(Discussion between counsel and witness off the*

10     *record)*

11             THE DEFENDANT:  (Through the Interpreter) He want

12     to say, yes, he cannot accept that he -- they tell him

13     to just bring it over here.  When they were given to

14     me, I just threw it away.  I didn't bring nothing to

15     North Carolina.  I went to North Carolina because I

16     didn't want to come back with these people.  They send

17     me back because I will have problems there.  That's

18     when I come here, when I got very sick here in prison,

19     I was very confused.  I didn't know nothing.  They give

20     me a negotiation about it.

21             MS. DOWNING:  I have to advise my client at this

22     time.  I would like the interpreter to be telling him

23     that he should not go along these lines.  He has given

24     a statement under the safety valve and he's in danger

25     of losing that acceptance of responsibility on the

1    safety valve if he tries to change any of those

2    statements now.

3            I think he's talking about other things in

4    addition to this trip to North Carolina but --

5            THE DEFENDANT:  (Through the Interpreter) I did

6    not bring nothing to North Carolina.

7            MS. DOWNING:  He's not charged with bringing

8    anything to North Carolina.  Throughout this, I have

9    had concerns, Mr. Barajas has had concerns about all of

10   the other activities, the guns and everything, and that

11   was what, when he first started off with that "I didn't

12   know any of these people," he's admitted to knowing the

13   people that he gave statements about.  But he's talking

14   about all those other people that are, that are stated

15   and --

16           MS. LITTLETON:  May I make a suggestion?  As I

17   understand, Mr. Barajas is, he is now contradicting

18   statements made to the Government in his safety valve

19   interview.  That would place him in jeopardy of losing

20   that reduction and subject him to the mandatory minimum

21   10-year sentence in this case.  If I could make a

22   suggestion, if we could take a brief continuance to

23   allow Ms. Downing to speak with her client.  Because

24   the consequences could be substantial for him if he

25   continues along this line.

1          THE COURT:  I think that's a good idea.

2          MS. DOWNING:  If we can do that, I am not sure if

3      I'll have the interpreter available.

4          THE CLERK:  We can go to the change of plea

5      first.  We could do the change of plea first and come

6      back to this.

7          THE COURT:  We can do that.  We've got something

8      else that we can do that we don't need the interpreter.

9      So, why don't you all go and see if you can get things

10     back on track.

11         *(Brief recess)*

12         THE COURT:  All right.  Are we ready to resume

13     the United States versus Jose Barajas?

14         MS. DOWNING:  I have had a moment to speak with

15     Mr. Barajas.  I advised him that he can tell the Court

16     anything he wants to.  He wants to make sure the Court

17     is specifically aware of, and what I think he might

18     have forgotten is the PSR, it's Paragraphs 115, 116 and

19     117.  Mostly 115 and 116 and those are that, he had

20     some emotional issues and some anxiety concerns and

21     he's just had some health problems and he wanted to

22     make sure that the Court was aware of that.

23         He has used the term, I don't know if this is

24     interpretation, but "sick in the head" at certain

25     points through this trial, or through this process, and

1    he just wants the Court to be aware that he's had some

2    of those issues.

3         THE COURT:  Okay.

4         MS. DOWNING:  As I said, I've told him if he

5    wants to speak to you he's well aware.  I did also want

6    to ask if the Court was able to -- well, received all

7    the different letters and I wasn't sure what to do with

8    the ones that were written in Spanish.  I just provided

9    them to the Court.  There were some written in English.

10   The ones that have been written in Spanish, it is my

11   understanding were along the same lines, good husband,

12   good uncle, a good brother, et cetera.

13        THE COURT:  Does that fairly summarize the tone

14   of those?  I have not been able to read them in

15   Spanish.

16        MS. DOWNING:  That was my understanding of them,

17   after talking to Mr. Barajas.

18        THE COURT:  We do have the English translation

19   from, I guess, his daughter.

20        MS. DOWNING:  Yes.  There is a letter from his

21   niece Sylvia Barajas that's in English.

22        THE COURT:  Mother of the children?

23        MS. DOWNING:  Yes.  From a friend of the family,

24   a doctor.  There is a nephew.  His sister.

25        THE COURT:  Is the substance similar to that from

1      the daughter and the mother of the children?

2          MS. DOWNING:  Yes, Your Honor.  That's my

3      understanding after going over the letters.

4          THE COURT:  Does Mr. Barajas want to make any

5      further comments?

6          THE DEFENDANT:  (Through the Interpreter) I want

7      to say, I want to say a lot of things.  Better I just

8      keep quiet.

9          THE COURT:  Okay.  Ms. Downing, you made

10     reference to those paragraphs where it talked about

11     some -- being kicked -- and then some emotional

12     concerns.  Is there any concern or question in this

13     case about Mr. Barajas' competency to be sentenced

14     today?

15         MS. DOWNING:  I have no concerns, and this is not

16     a current concern.  He's more talking about back when

17     we were preparing for trial and --

18         THE COURT:  Okay.  Do you have any other comments

19     you would like to make?

20         MS. DOWNING:  No, Your Honor.  Well, I do, yes.

21     He states in his Presentence Investigation Report and

22     he's told me, he doesn't use drugs.  I would recommend

23     if the Court would allow him to participate in that

24     drug treatment program while he's incarcerated, even

25     though he has not used them, he's obviously been around

1      people.  That part of that process is an educational

2      process if he chooses to avail himself of it.  I might

3      ask that he be able to do that.

4            I might ask that he be placed near Houston, which

5      is where his family is.

6            And right now, the guideline imprisonment range

7      that the Court is considering is 97 to 121 months.  As

8      the Court knows, that's an advisory guideline range.

9      The Court has the power to go above or below it.  And

10     based on what the Court has heard and the duress that

11     he was under and the concern and the stress, that the

12     Court go to the low end of the guidelines to 97 months

13     or even do a downward departure based on that.

14            THE COURT:  Does the Government have any

15     comments?

16            MS. LITTLETON:  No, Your Honor.

17            THE COURT:  Does anybody have anything further

18     before I pronounce sentence?

19            MS. DOWNING:  Nothing from me, Your Honor.

20            MS. LITTLETON:  No, Judge.

21            THE COURT:  All right.  I have previously

22     adjudicated the defendant Jose Barajas guilty as

23     charged in Counts 6 and 9 of the Indictment in

24     accordance with the verdict of the jury.

25            I have determined that the Presentence

 1          Investigation Report is now accurate and order the
 2          findings of that report to be incorporated into the
 3          following sentence.  Pursuant to the Sentencing Reform
 4          Act of 1984 as amended, it is the judgment of the Court
 5          that Jose Barajas is hereby committed to the custody of
 6          the Bureau of Prisons to be imprisoned for a term of
 7          109 months as to each of Counts 6 and 9 to be served
 8          concurrently with one another.  This sentence takes
 9          into account my finding that Mr. Barajas meets the
10          criteria for safety valve pursuant to 18 U.S. Code,
11          Section 3553 Subparagraphs F-1 through 5.  And Section
12          5C1.2, Subparagraphs 1 through 5.
13               Furthermore, this sentence is imposed at the
14          midpoint of the guideline range because there are no
15          aggravating or mitigating factors that have not already
16          been considered.  Upon review of all factors properly
17          considered, under 18 U.S. Code Section 3553 A, and
18          taking into account the advisory nature of the
19          sentencing guidelines, I conclude that this sentence
20          which is within the guidelines range is appropriate.
21          The sentence is sufficient; a lower sentence would not
22          be sufficient; and a greater sentence is not necessary
23          to comply with the statutorily defined purposes of
24          sentencing.
25               In making this sentencing decision, I consulted

1    the sentencing guidelines, and calculated the advisory

2    range to be 97 to 121 months.  This is based upon an

3    offense level of 32.  There's a downward adjustment of

4    2 for the safety valve.  As I have ruled during this

5    hearing, there is no further downward adjustment for

6    acceptance of responsibility and this results in a

7    total offense level of 30, criminal history category is

8    1.

9        I have then determined whether, pursuant to the

10   Sentencing Commissions policy statements, if any

11   departures or variances from the advisory guideline

12   range were clearly appropriate.  In this case, a

13   departure from the sentencing guideline range is not

14   warranted.  I find that Mr. Barajas lacks the ability

15   to pay a fine in any amount.  Imposition of a fine is

16   waived.  However, as required by law, Mr. Barajas shall

17   pay the special monetary assessment in the amount of

18   $100 as to each of Counts 6 and 9 for a total of $200.

19   This special monetary assessment is due immediately.

20       Upon release from imprisonment, Mr. Barajas shall

21   be placed on supervised release for a total term of 5

22   years.  This term consists of 5 years as to Count 6 and

23   4 years as to Count 9 to be served concurrently with

24   one another.  While on supervised release, Mr. Barajas

25   shall comply with the standard conditions of

1    supervision adopted by the Northern District of Florida

2    and the following special conditions:  He shall not own

3    or possess either directly or constructively, a

4    firearm, ammunition, dangerous weapon or destructive

5    device.  He shall provide his probation officer all

6    requested business and personal financial information.

7    He shall cooperate with his probation officer and the

8    Department of Homeland Security about his immigration

9    status and shall abide by all orders or instructions of

10    the Department of Homeland Security.

11         If he is deported, Mr. Barajas shall not reenter

12    the United States without the permission of the

13    Department of Homeland Security.  The total sentence is

14    109 months imprisonment, 5 years supervised release,

15    and $200 special monetary assessment.

16         Counsel, are there any objections to either my

17    ultimate findings of fact or conclusions of law about

18    this sentence?

19         MS. DOWNING:  None other than previously raised

20    and addressed.

21         MS. LITTLETON:  No, Your Honor.

22         THE COURT:  Any objections to the manner in which

23    I pronounced sentence?

24         MS. DOWNING:  No, Your Honor.

25         MS. LITTLETON:  No, Your Honor.

```
 1          THE COURT:  Mr. Barajas, you are advised that you
 2     have the right to appeal this sentence and your
 3     conviction.  If you are unable to afford the cost of an
 4     appeal, you may apply for Leave to Appeal In Forma
 5     Pauperis.  Any Notice of Appeal must be filed within 14
 6     days.  And if you request, the Court Clerk will
 7     immediately file a Notice of Appeal on your behalf.  I
 8     suggest that before you and Ms. Downing depart today,
 9     that you and she talk so that you both have a clear
10     understanding about your intention to appeal your
11     conviction and/or your sentence so that that 14-day
12     deadline is not missed.
13          MS. DOWNING:  He has advised me he wishes to
14     file.  I will take care of that, Your Honor.
15          THE COURT:  As requested, I will grant those
16     requests that the Bureau of Prisons consider placing
17     him as close as practicable -- where is his family?
18          MS. DOWNING:  Houston, Your Honor.
19          THE COURT:  In Houston, and that he be considered
20     for the residential substance abuse program if he meets
21     the criteria given his history.
22          Is there anything further?
23          MS. DOWNING:  No, Your Honor.
24          MS. LITTLETON:  Nothing, Your Honor.
25          THE COURT:  This will conclude this sentencing.
```

1          *(The hearing was concluded at 11:25 a.m.)*

2

3                        **CERTIFICATE OF REPORTER**

4    STATE OF FLORIDA     )

5    COUNTY OF OKALOOSA )

6          I, Robin White Wierzbicki, Registered Professional

7    Reporter, certify that I was authorized to and did

8    stenographically report the foregoing hearing; and that the

9    transcript is a true record of the proceedings.

10         I further certify that I am not a relative, employee,

11   attorney, or counsel of any of the parties, nor am I a

12   relative or employee of any of the parties' attorney or

13   counsel connected with the action, nor am I

14   financially interested in this action.

15

16

17                    ROBIN WHITE WIERZBICKI, FAPR
                      Registered Professional Reporter

18

19

20

21

22

23

24

25